UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

—————————————————————

KAREN W.,[1]

                                        Plaintiff,                    DECISION AND ORDER

-vs-                                                                    1:20-CV-0267 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

—————————————————————

INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Oct. 1, 2020, ECF No. 14; Def.'s Mot., Dec. 13, 2020, ECF No. 17. Plaintiff maintains that the Commissioner's decision should be reversed and remanded for further administrative proceedings because the Administrative Law Judge's findings that Plaintiff (1) did not need an assistive device at any point of the insured period, and (2) is not disabled was based on an incomplete evaluation of the relevant evidence and an insufficient medical expert opinion. Pl. Mem. of Law, 25, Oct. 1, 2020, ECF No. 14-1. The Commissioner disputes Plaintiff's contentions.

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 14] is denied, the Commissioner's motion [ECF No. 17] is granted, and the Clerk of Court is respectfully directed to close this case.

BACKGROUND

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

Standard for Disability Determination

The law defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to qualify for DIB benefits, the DIB claimant must satisfy the requirements for special insured status. 42 U.S.C. § 423(c)(1). In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether a DIB or SSI claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)).

2

The claimant bears the burden of proof for the first four steps of the sequential evaluation. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

Procedural History

As a prologue to his analysis finding that Plaintiff is not disabled, and hence not entitled to DIB benefits, the ALJ provided a thorough procedural history of Plaintiff's case:

> [O]n October 18, 2013, the claimant protectively filed a Title II application for a Period of Disability and Disability Insurance Benefits, alleging disability beginning March 21, 2013.[2] The claim was denied initially on January 16, 2014. Thereafter, the claimant filed a written request for hearing on January 23, 2014 (20 CFR 404.929 *et seq*.). The claimant appeared and testified at a hearing held on February 10, 2016, in Buffalo, New York with Administrative Law Judge Lynette Gohr. Vocational expert Rachel A. Duchon also appeared at the hearing. Jennifer M. Dillon, Attorney at Law, represented the claimant at that time. On March 9, 2016, ALJ Gohr issued a Notice of Decision - Unfavorable, finding that the claimant had not been disabled at any point through the date of the decision (. . .). The claimant requested review of that decision by the Appeals Council, which was denied on August 15, 2017 (. . .). The claimant then filed a lawsuit in the United States District Court for the Western District of New York. On March 7, 2018, by way of stipulation, the District Court remanded the claim for further administrative proceedings (. . .).
>
> On September 12, 2018, the Appeals Council vacated the final decision of the Commissioner of Social Security and remanded the case for further administrative proceedings. Specifically, the Appeals Council has directed me to: Evaluate whether an assistive devices [sic] is medically necessary for any portion of the relevant period at issue as required by Social Security Ruling 96-9p; Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 96-8p); Give further

---

[2]  The alleged onset date for Plaintiff's disability is March 21, 2013, the date that she was involved in a motor vehicle accident during which "she was T-boned on the right side of her vehicle while she was a belted driver on the move." Tr. 1252.

3

consideration to whether the claimant has past relevant work and, if so, can perform it (20 CFR 404.1560(a)-(b)); Obtain vocational expert evidence to assist in evaluating whether the claimant can perform past relevant work as actually or generally performed . . . . I note that I have fully complied with the directives of the remand order, as discussed in detail below. Consistent with this, the claimant appeared and testified at a hearing held on September 11, 2019, in Buffalo, New York. Also appearing and testifying by telephone were medical expert Peter Schosheim, M.D., and vocational expert Michele Erbacher. Lewis L. Schwartz, Attorney at Law, now represents the claimant.

Transcript ("Tr."), 1028, Jul. 30, 2020, ECF No. 11 (citations to the administrative record omitted).

At the outset of the hearing before the ALJ, Plaintiff testified that prior to the alleged onset date, she worked two part-time jobs: one as a data collector for a retail operation, and the other as a clerk at Erie Community College ("ECC"). Tr. 1076–77. Plaintiff stated that she was unable to return to her work as a data collector following the March 2013 alleged onset date of her disability, but that she began working at ECC again in February of 2014. Tr. 1055. She indicated that she continues to work at ECC 19 hours each week, at approximately $15 per hour. Tr. 1055. Thereafter, the following exchange occurred between Plaintiff and the ALJ:

[ALJ:] . . . And what is the reason that you're not able to work more than 19 hours?

[PLA:] . . . I cannot work . . . . more than the 4 hours allowed [each day] . . . . because it's very fatiguing and I have to go home and rest.

[ALJ:] Okay. So let's imagine that you've got a grant and they expanded it to, oh, an eight-hour day job, the reason you couldn't do those extra hours would be?

[PLA:] Because it hurts too much . . . it's too stressful. I can't. I would not be able to do it.

[ALJ:] Have you ever not gone into work because of something related to

4

the conditions you say disable you?

[PLA:] Sometimes, yes.

[ALJ:] When was the last time?

[PLA:] Before I had the surgeries, like even a couple times after the surgeries.

[ALJ:] Okay. And have you ever had to leave work because of your conditions, leave work earlier than scheduled?

[PLA:] No.

Tr. 1056.

After this exchange, the ALJ called a medical expert, Dr. Peter Schosheim, to testify. Tr. 1058. Prior to Dr. Schosheim's testimony, the ALJ asked him whether he needed any additional information. Tr. 1058. The following questioning ensued:

[DR.:] I . . . just wanted to find out . . . . if [Plaintiff] was continuing to need a cane or any type of ambulatory assistant [sic] device?

[ALJ:] Now, as you're working, do you use a cane, a wheelchair, a walker, any kind of device?

[PLA:] Not now, not after the [hip] surgery . . . . A couple of months after the [hip replacement] surgery.

Tr. 1058–59. Dr Schosheim then proceeded with a brief review of the history of Plaintiff's injury, as well as an RFC determination based on his reading of the objective evidence. He stated:

[DR.:] So, in conclusion, we have an individual who has the following impairments, chronic low back pain with the findings of a herniated disc and degenerative disc disease of the lumbar spine with minimal radicular symptoms; right hip traumatic arthritis, status-post right total hip replacement. Your Honor, based on the records, it's my opinion the Claimant would not meet or equal a specific listing.

* * * *

5

I believe the Claimant could lift/carry/push/pull occasionally 20 pounds; frequently lift/carry/push/pull 10 pounds. This Claimant could stand and/or walk combined, standing and walking combined for four hours out of an eight-hour day and she could sit for six hours out of an eight-hour day with normal breaks. She could never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; frequently balance on her left leg; occasionally balance on the right; occasionally kneel; occasionally crouch; occasionally crawl; occasionally stoop.

The Claimant has no manipulative limitations. She's able to reach in all directions with both arms, including overhead without any limitations. She has no gross manipulation, fine manipulation or skin receptor limitations with use of her hands. She has no visual or communicative limitations. The Claimant would need to avoid all exposure to heavy vibrations such as a jackhammer and would need to avoid all exposure to hazardous machinery and unprotected heights.

* * *

ALJ: Okay. One last question from me, Doctor, is there – you spoke in terms of this four hours out of eight and six hours out of eight for the various postural movement. The Claimant is currently and has been working for quite some time, since 2014, but not working at full-time, working at approximately half-time. Is there anything in the record that would substantiate the inability to work full-time or are you -- is your position more that it would be in line with the four hour/six hour limits that you gave earlier?

[DR.:] Yeah, based, based on the objective findings, Your Honor, my job as a medical expert for Social Security is to look at the objective findings and determine the RFC from the objective findings. Based on those objective findings, I believe that she could work full-time with the restrictions that I provided you.

Tr. 1060–63.

Plaintiff then elaborated further on the work she did at ECC before the alleged onset date in March 2013. Plaintiff stated that she "answered phones and helped students to get their GED, get into the pre-collegiate program . . . sign up for them and . . . also go to the mailroom and take . . . packages and deliver them to other campuses . . . ." Tr. 1077. Since returning to work in February 2014, Plaintiff is not able to deliver packages

as she once did, but still answers phones, does the filing, orders supplies for the office, and "takes care of students" in person and on the phone. Tr. 1078–79.

On November 13, 2019, the ALJ denied Plaintiff's claim for DIB benefits. Tr. 1043 In his decision, the ALJ found that Plaintiff met the special insured status requirements of the Social Security Act through December 31, 2023. Tr. 1031. At step one of the five-step evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 21, 2013, the alleged onset date. Tr. 1031. At step two, the ALJ determined that Plaintiff has the following severe impairments: lumbar facet joint arthropathy; sacroiliitis; a herniated lumbar disc without myelopathy; status post surgical repair of labral tear right hip; and degenerative joint disease of the right hip. Tr. 1031. The ALJ also assessed Plaintiff's alleged mental impairment of anxiety utilizing the "special technique" required by 20 C.F.R. § 404.1520a.[3] Tr. 13. In so doing, the ALJ determined that Plaintiff's alleged anxiety caused no more than mild limitations in any of the four psychological areas of functioning, and therefore found that Plaintiff's mental impairments are non-severe. Tr. 1032.

---

[3] The Second Circuit has held that where an ALJ's failure to adhere to the regulations' special technique is not harmless, failure to apply the "special technique" is reversible error. *See Kohler v. Astrue*, 546 F.3d 260, 265 n. 4 (2d Cir. 2008). The listings of specific mental impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 ("App'x 1 § 12.00") provide the ALJ with detailed guidance for application of the "special technique." Generally, a claimant must satisfy at least two classes of criteria to justify a finding of a mental disorder. "Paragraph A" criteria include the "the medical criteria that must be present in [a claimaint's] medical evidence" to indicate a particular disorder (e.g., the mental disorder of "schizophrenia" requires that the evidence include medical documentation of hallucinations or another similar symptom). App'x 1 § 12.00A(2)(a). "Paragraph B" criteria are four broad areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. App'x 1 § 12.00A(2)(b). A claimant must show an "extreme" limitation of one, or "marked" limitation of two, of the Paragraph B criteria. "Paragraph C" criteria are used to evaluate whether a claimant has a "serious and persistent" mental disorder.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in § 1.02(A) or § 1.04 in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 15. Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Plaintiff had the residual functional capacity[4] ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), except that she:

> [C]an lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk four hours in a total eight-hour day and sit six hours in a total eight-hour day, with normal breaks and lunch. She cannot climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs. She can frequently balance on the left leg. She can occasionally balance on the right leg. She can occasionally kneel, crouch, stoop, or crawl. She may not work around heavy vibratory machines such as a jackhammer, hazardous machinery, or unprotected heights.

Tr. 1033.

Based on this RFC, as well as the testimony of the vocational expert, at step four the ALJ found that Plaintiff is capable of performing her past relevant work as a general clerk. Tr. 1041. Hence, the ALJ concluded that Plaintiff *is not* disabled for the purposes of DIB. Tr. 1043.

Plaintiff did not file exceptions to the ALJ's decision, and the Social Security Administration's Appeals Council did not assume jurisdiction within 60 days. The ALJ's November 2019 decision thus became the final decision of the Commissioner and is properly before this Court. *See Lefebvre v. Saul*, 411 F. Supp.3d 173, 178 (D. Mass. 2019) (citing 20 C.F.R. § 404.984(d)).

---

[4] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

DISCUSSION

In its remand order of September 12, 2018, the Commissioner's Appeals Council expressly directed the ALJ to – among other things – "[e]valuate whether an assistive devices [sic] is medically necessary for any portion of the relevant period at issue as required by Social Security Ruling 96-9p." Tr. at 1156. As quoted above, in his November 2019 decision, the ALJ noted that he had "fully complied with the directives of the remand order." Tr. 1028. Indeed, the ALJ's decision included a lengthy paragraph, with dozens of citations to the record, directly addressing the issue:

> Turning to the use of an assistive device, as also directed in the Appeals Council remand order (Exhibit 8A), I note that there is no evidence of any 12-month period in which the claimant required use of an assistive device. For example, although the claimant testified that she started using a wheelchair two months after the accident and that she used a cane for about a year, her treating chiropractor prescribed the chair to be used for only six months (Exhibit l0F, page 31; Exhibit 12F, page 2; hearing testimony) and her treating physician Dr. Huckell noted that the claimant walked with a normal gait (See, e.g., Exhibit 11F, page 4; Exhibit 14F, page 20; Exhibit 18F, pages 68, 69; Exhibit 19F, page 50). In August 2013, independent examiner acupuncturist Herbert Lau, AP, opined that the claimant had no need for further durable medical equipment, as she was not using the wheelchair by the time of his examination and already had a back brace and TENS unit. He noted that she was capable of performing her daily activities (Exhibit 8F, page 5). By August 2014, she used a cane only intermittently, which is inconsistent with her testimony (Exhibit 14F, page 2; hearing testimony). In January 2016, the claimant was ambulating without crutches and had transitioned out of formal physical therapy to a home program (Exhibit 19F, page 61). She did ambulate with a cane in April 2016 but reported improvement from her pre-operative status. However, she was in no acute distress, was doing well, and was told to transition away from her cane as she felt comfortable (Exhibit 23F, page 2). At a July 2016 independent examination, Dr. Carr noted that the claimant brought her cane with her to the examination, but "carries the cane during much of it and does not appear to actually use it" (Exhibit 24F). By January 2017, she was told to "wean off the cane as able" (Exhibit 27F, page 4). The claimant admitted that she was improved and no longer using a cane shortly after her most recent surgery (Hearing testimony). Most notably, impartial medical expert Dr. Schosheim, who thoroughly reviewed the totality of the medical

evidence, the imaging, and the examination findings, testified that there was no 12-month continuous period in which the claimant required an assistive device. Specifically, he stated that the periods in which the claimant would have required an assistive device did not exceed two to four months (Hearing testimony). As noted above, Dr. Schosheim opined that the claimant retained a residual functional capacity to perform a reduced range of light exertion, but did not require a cane (Hearing testimony). Based on the other evidence discussed in detail below, I have adopted this residual functional capacity. Accordingly, I do not find that the claimant required the use of an assistive device for ambulation for any 12-month period.

Tr. 1036–37.

On appeal to this Court, Plaintiff maintains that the ALJ committed legal error by failing to comply with the Appeals Council's remand order when he relied on an inadequate evaluation of the evidence, and an unsupported non-examining review opinion to find that Plaintiff did not need an assistive device. Pl. Mem. of Law at 19. The Court finds no merit in Plaintiff's arguments.

Judicial Review of the Commissioner's Final Decision

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner on whether a claimant has a "disability" that would entitle him or her to DIB and SSI benefits. *See also* 42 U.S.C. § 1383(c)(3). "The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted).

Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

The Appeals Council's Remand Order and the ALJ's Decision

The regulations clearly state that, upon having a case remanded by the Appeals Council, "an 'administrative law judge *shall* take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order.'" *Ellis v. Colvin*, 29 F. Supp.3d 288, 299 (W.D.N.Y. 2014) (quoting 20 C.F.R. § 404.977(b) (emphasis added)). "The ALJ's failure to comply with the Appeals Council's order constitutes legal error, and necessitates a remand." *Scott v. Barnhart*, 592 F. Supp.2d 360, 371 (W.D.N.Y. 2009). Plaintiff maintains that the ALJ committed legal error in this case when he failed to heed the Appeals Council's order to "[e]valuate whether an assistive devices [sic] is medically necessary for any portion of the relevant period at issue as required by Social Security Ruling 96-9p ["SSR 96-9p"]."

In SSR 96-9p, the Commissioner ruled that "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the

11

circumstances for which it is needed . . . ." *Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, SSR 96-9P, 1996 WL 374185, at *7 (S.S.A. July 2, 1996). The Commissioner directed that, as part of this analysis, "[t]he [ALJ] must always consider the particular facts of a case." *Id.*

In the present case, the ALJ cited to several instances of medical documentation he encountered in the record relating to Plaintiff's need for an assistive device. Specifically, the ALJ cited an order from Plaintiff's chiropractor in February 2014 "recommending a wheel chair [sic] for . . . at least the next 6 months" (Tr. 499), and a treatment note from her primary care physician in August 2015 noting that Plaintiff's "symptoms cause her to walk with a cane . . . . [and] use her crutches if she has to be on her feet or walk a long distance" (Tr. 550).

However, the ALJ also cited multiple portions of the record that indicated Plaintiff did not need an assistive device for the requisite continuous period of at least 12 months. Plaintiff's treating orthopedist found on at least a few occasions that she was "able to walk with a normal gait," and "is not currently using an assistive walking device." *See, e.g.,* Tr. 458 (February 2014), Tr. 464 (October 2013), Tr. 472 (October 2013). *See also* Tr. 1036 (citing Tr. 397, acupuncturist Herbert Lau's treatment notes from August 2013 that Plaintiff has "no need for further durable medical equipment" because she is "not using the wheelchair . . ."). Further, treatment notes from an appointment with orthopedist Dr. Peter Gambacorta in January 2016 indicated that Plaintiff could ambulate without crutches (Tr. 1003), and exam notes from orthopedist Dr. Daniel Carr in July 2016 indicated that Plaintiff entered the appointment "ambulating very slowly with a cane although she carries

the cane during much of [the examination] and does not appear to actually use it (Tr. 1253).

Lastly – and, according to the ALJ, "[m]ost notably" – the ALJ considered the hearing testimony of non-examining medical expert Dr. Schosheim. Tr. 1037. The ALJ stated that Dr. Schosheim "thoroughly reviewed the totality of the medical evidence, the imaging, and the examination findings, [and then] testified that . . . . the periods in which [Plaintiff] would have required an assistive device did not exceed two to four months." Tr. 1037. Taking all of the aforementioned evidence into account, the ALJ concluded "that there is no evidence of any 12-month period in which the claimant required use of an assistive device." Tr. 1036.

Plaintiff suggests that in reaching this conclusion, the ALJ wrongly relied upon the opinion of Dr. Schosheim, whose analysis was both inaccurate and entitled to little weight. Pl. Mem. of Law at 23–24. The Court disagrees with Plaintiff's suggestion.

In his testimony at Plaintiff's hearing before the ALJ, Dr. Schosheim affirmed that he had reviewed the entire record and identified three instances following the alleged onset date that Plaintiff "may have had intermittent periods of time that she couldn't work at all . . .," but noted that none of the three periods were for a continuous period of at least 12 months. Tr. 1063. Dr. Schosheim identified those periods as: Plaintiff's recovery from the injuries sustained in her accident from March 21, 2013 (the alleged onset date) through August 2013; her right hip arthroscopy and recovery from May 2014 through July 2014; and her right hip replacement and subsequent recovery from October 2016 through February 2017. Tr. 1063–64.

During his examination of Dr. Schosheim, Plaintiff's counsel pointed out that Dr.

Schosheim had missed a fourth period of time during which Plaintiff was unable to work, for an additional right hip procedure that took place in October 2015 and disabled Plaintiff through February 2016. Tr. 1067–69. Dr. Schosheim acknowledged his inadvertent oversight, but indicated that the discovery of the fourth period of disability would not change his opinion of Plaintiff's RFC because it was still the case that none of the time periods of Plaintiff's incapacity were for a continuous period of at least 12 months. Tr. 1069.

A claimant's residual functional capacity is the most that the claimant can still do despite his or her impairments, and is assessed "based on *all* of the relevant medical and other evidence" in the claimant's case record. 20 C.F.R. § 404.1545(a)(1)–(3) (emphasis added). Pursuant to the "treating physician rule," the ALJ is required to give more weight in his RFC assessment to the medical opinions of a claimant's treating sources where those opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). "A corollary to the treating physician rule is that the opinion of a non-examining doctor by itself cannot constitute the contrary substantial evidence required to override the treating physician's diagnosis." *Hidalgo v. Bowen*, 822 F.2d 294, 297 (2d Cir. 1987) (citations to consistent rulings in several other circuits omitted).

Nothing in the ALJ's extended discussion of his RFC determination, and particularly of his treatment of Plaintiff's need for an assistive device, indicates either that the ALJ applied an improper legal standard or that his determination was not supported by substantial evidence. In his decision, the ALJ repeated the Appeals Council's order to

evaluate whether an assistive device is medically necessary for Plaintiff, and stated that he "fully complied with the directives of the [Appeals Council's] remand order . . . ." Tr. 1028. Moreover, the ALJ examined *all* of the evidence as required by 20 C.F.R. 404. 1545, and clearly cited to both (1) those instances in the record which he believed to support a finding that Plaintiff needs an assistive device, and (2) those instances in the record that he believed supported a finding that Plaintiff does not need an assistive device. Tr. 1036–37. Further, although he did ultimately give "great weight" to the opinion of Dr. Schosheim, the ALJ did not rely on Dr. Schosheim's opinion "by itself" as constituting substantial evidence, but rather considered the opinion in the context of the other record evidence, which the ALJ found to be consistent with Dr. Schosheim's opinion. Tr. 1039. Indeed, as the ALJ's exhaustive review of the evidence of Plaintiff's treatment for her hip condition indicates, in addition to the opinion of Dr. Schosheim, there is ample evidence to support the ALJ's determination in the records and notes of orthopedic surgeon Dr. Gambacorta, Plaintiff's treating physician Dr. Casey, and medical examiner Dr. Carr. Tr. 1037–38.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings [ECF No. 14] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 17] is granted. The Clerk is respectfully directed to close this case.

DATED:       September 23, 2021
             Rochester, New York

                                   /s/ Charles J. Siragusa
                                   CHARLES J. SIRAGUSA
                                   United States District Judge